UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ALYCIA CARMICHAEL - MILAN<br><br>    Plaintiff,<br><br>    v.<br><br>GWEN SAILER, et al.,<br><br>    Defendants. | No. C07-5091RBL<br><br>ORDER GRANTING SUMMARY JUDGMENT AND GRANTING MOTION FOR LEAVE TO AMEND |

This matter is before the court on the Defendants' Motion for Summary Judgment [Dkt. #9], and Plaintiff's Motion for Leave to Amend her Complaint [Dkt. #13]

Plaintiff Carmichael -Milan is a former student at Bates Technical College. In March, 2006, Defendant Sailer, the school's Vice President of Student Services, suspended Plaintiff after she filed a student grievance against a nursing instructor. Plaintiff appealed, and the suspension was upheld by the Bates Technical College Student/Faculty Disciplinary Committee. She appealed again and the suspension was ultimately upheld by the school's President.

In her Complaint[1], Plaintiff alleges she was denied her First Amendment and Due Process rights,

---

[1] Plaintiff's Motion for Leave to Amend her Complaint, consistent with the court's resolution of Defendants' Summary Judgment Motions, is granted below.

ORDER                                     1

and asserts claims under 42 U.S.C. §1983.  The defendants are Sailer; Bates President David Borofsky, and the Chair of the Student/Faculty Disciplinary Committee, John Pearson.

All defendants move to dismiss Plaintiff's Due Process claim, which Plaintiff does not oppose. Defendant Pearson moves to dismiss all claims against him, on the basis of Absolute and Qualified Immunity, and on the ground that Plaintiff cannot establish that he deprived her of any constitutional right.

**1. Factual Background**

Plaintiff Alycia Carmichael-Milan is a former Bates Technical College Practical Nursing student. In March 2006, she was suspended by Defendant Sailer, the school's Vice President of Student Services for misconduct.  The suspension arose from a written grievance filed by Plaintiff against a teacher, for allegedly grabbing her.

Plaintiff wrote: "[I]t is my desire to complete this nursing program and this letter is to advise the administration of Bates Technical College that further physical assault/battery, humiliation, name calling, demeaning remarks, unfair grading, mental and emotional abuse will no longer be tolerated without recourse. These acts are in direct violation of Washington State Law." [See Dkt. #12].  Plaintiff's grievance was viewed as disrespectful and intimidating by the School, and the School thought it showed that Plaintiff "might present an imminent danger."  The School charged Plaintiff with making false charges and implied false charges against her instructor, and for using intimidating and disrespectful language.  She also was charged with and for failing to comply with an instruction not to wear a sweatshirt over her "scrubs," and with making "mocking" remarks about the nursing Program during and interview with Vice President Sailer.

Plaintiff appealed her suspension to the College's Student/Faculty Disciplinary Committee, which held a hearing pursuant to WAC 495A-121-065.  Plaintiff attended and was represented by counsel.  The Committee unanimously affirmed the decision.  Because the vote was unanimous, the head of the committee, Pearson, did not vote.  He never met Plaintiff and had no interaction with her before or after

ORDER  2

the hearing. As the Chair of the Committee, Pearson signed the Committee's decision.

Plaintiff appealed the Committee's decision to the School's President, who also upheld the suspension. Plaintiff has sued each of the administrators involved in her suspension, alleging deprivation of her constitutional rights to free speech and due process. Her complaint includes the allegation that she "engaged in protected speech activity" on three or more occasions, but does not provide the context or the content, other than the student grievance outlined above.

Defendant Pearson argues that Plaintiff's claims against him must fail as a matter of law because (1) he is absolutely immune from liability because his role was that of a quasi judicial administrator; (2) that he is in any event qualifiedly immune and for any violation of Plaintiff's constitutional rights; and (3) he did not personally participate in any deprivation of Plaintiff's constitutional rights.

**2. Summary Judgment Standard.**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

**3.    Plaintiffs' Due Process claims.**

Plaintiff has abandoned her due process claims against all defendants, instead seeking to Amend her

ORDER                                          3

Complaint to "clarify the factual basis for her First Amendment Claim." [See Dkt. #13 at 1]. She argues that her motion to amend her complaint to delete the due process claim makes the Defendants' motion on that claim moot, and asks the court to dismiss it without prejudice. Defendants argue, correctly, that a Plaintiff may not voluntarily dismiss a claim without prejudice in the face of a motion for summary judgment. Fed. R. Civ. P. 41(a). Plaintiffs' due process claims are therefore dismissed with prejudice.

**4. Plaintiffs' First Amendment claims against John Pearson.**

Plaintiff argues, in her complaint and her proposed amended complaint, that defendant Pearson deprived her of her First Amendment right to Free Speech by overseeing the disciplinary committee. She argues that Pearson personally participated in the deprivation of her rights for purposes of 42 U.S.C. §1982 and that he is not entitled to absolute or qualified immunity.

    **a.**    **Absolute Immunity**

Pearson argues that in acting as a quasi-judicial officer he is entitled to the same sort of absolute immunity as a judge, citing for example *Mishler v. Clift,* 191 F.3d 998, 1007 (9th Cir. 1999). In *Mischler*, the 9th Circuit discussed at some length the bases and the application of absolute immunity, discussing particularly the impact of the Supreme Court's decision in *Butz v. Economou*, 438 U.S. 478 (1978). It stated in part: "It is well settled that judges and prosecutors are entitled to absolute immunity. . . . The essential rationale is that, without protection from retaliatory suits, a judge would lose "that independence without which no judiciary can be either respectable or useful."

It also explained that the important inquiry is not the position of the person claiming absolute immunity, but rather the function he or she is performing at the time. If the function is sufficiently akin to a judicial process, absolute immunity is granted. Six factors are used to judge this "functionally comparable" standard:

    (a) the need to assure that the individual can perform his functions without

ORDER    4

      harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal.

*See Mishler*, 191 F.3d at 998; *see also Cleavinger v. Saxner*, 474 U.S. 93 (1985); *Wood v. Strickland,* 420 U.S. 308 (1975).  If the proceeding at issue has these attributes, the presiding body is sufficiently quasi-judicial to be entitled to absolute immunity.

      Plaintiff argues that participants in student disciplinary proceedings are entitled only to qualified, and not absolute, immunity.  She cites *Hafer v. Melo*, 503 U.S. 21, 29 (1991), for the proposition that only a very limited class of individuals is entitled to absolute immunity.  Plaintiff argues it is clear that school officials involved in student disciplinary proceedings at public schools are protected by qualified, and not absolute immunity. *Wood; Cleavinger.*

      In *Wood*, the Supreme Court held that while it was adjudicative in nature, a school board disciplinary committee was not functioning in a sufficiently quasi-judicial manner to enjoy absolute immunity, and that qualified immunity afforded sufficient protection:

> Liability for damages for every action which is found subsequently to have been violative of a student's constitutional rights and to have caused compensable injury would unfairly impose upon the school decisionmaker the burden of mistakes made in good faith in the course of exercising his discretion within the scope of his official duties. School board members, among other duties, must judge whether there have been violations of school regulations and, if so, the appropriate sanctions for the violations. Denying any measure of immunity in these circumstances 'would contribute not to principled and fearless decision-making but to intimidation. . . .
>
> But at the same time, the judgment implicit in this common-law development is that absolute immunity would not be justified since it would not sufficiently increase the ability of school officials to exercise their discretion in a forthright manner to warrant the absence of a remedy for students subjected to intentional or otherwise inexcusable deprivations.

ORDER                                      5

*See Wood* 420 U.S. at 320, 321.

Pearson emphasizes that the hearing was held pursuant to the Washington Administrative Code, Plaintiff was entitled to and did have an attorney present at the hearing, and that Pearson's only role in the process was to preside over the hearing. He also emphasizes that he did not vote on Plaintiff's appeal, and that as a result the plaintiff cannot establish that he participated in any deprivation of Plaintiff's constitutional rights.

He claims that the function of the board was more like that of a judge than was the school board at issue in *Wood*, or the prison disciplinary committee at issue in *Cleavinger*. While some additional safeguards were in place in this case, and Pearson did not actually vote to uphold the suspension, the policy articulated in *Wood* (quoted above) persuades the court that Pearson is not entitled to absolute, judicial immunity.

**b.    Qualified Immunity**

Qualified immunity protects "government officials ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 547 U.S. 800, 818 (1982). In *Saucier v. Katz*, 533 U.S. 194, 201 (2001), the Supreme Court set out a two step inquiry in determining whether an official has qualified immunity. First, taken in the light most favorable to the party asserting the injury, do the facts show the officer's conduct violated a constitutional right? Second, the court must ask whether the right was clearly established. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [actor] his conduct was unlawful in the situation he confronted. *Id.*; *see also Phillips v. Hust*, 477 F.3d 1070, 1079 (9th Cir. 2007).

The first inquiry, then, is whether Plaintiff has for purposes of summary judgment demonstrated that she was deprived of a constitutional right. She argues that her grievance and subsequent conduct (not

specifically described by the parties) constituted protected free speech under the First Amendment, and that to suspend her on the basis of that speech was unconstitutional. She argues that the court cannot resolve facts on the qualified immunity issue, just as it cannot resolve factual questions of any other nature in the context of summary judgment, and that she is entitled to additional discovery before the court rules on the merits of the claim. Plaintiff does not, however, move for additional discovery under Rule 56(f), or describe what facts are left to be determined: the content of Plaintiff's speech is largely undisputed.

Plaintiff characterizes her speech as an exercise in "the right to complain to public officials" and that her "efforts to attain redress for an alleged assault by a teacher is protected First Amendment activity." [*See* Dkt. #12 at 11.] Plaintiff also argues that her contention the speech is protected is not challenged by the defendants.

She does not, however, explain how the First Amendment protects the words and conduct which were the subject of the School's disciplinary actions. She cites *United Mine Workers v. Illinois Bar Association,* 389 U.S. 217 (1969) for the undisputable proposition that "the right to complain and seek administrative relief are among the most precious of our civil liberties." She cites *Estate of Morris v. Daplito*, 297 F. Supp.2d 680 (S.D.N.Y. 2004) for the proposition that "a student's efforts to seek redress for an alleged assault by a teacher is a protected First Amendment activity." While these general statements are inherently true, nether case is analogous to the Plaintiff's case here.

Plaintiff does not squarely address the words she actually used to complain and seek redress, and must concede that not all speech made in such efforts is necessarily protected. Her claims against Pearson relate to the decision of the Disciplinary Committee, which did more than suspend her for the content of her grievance. Additionally, it considered claims that she made intentionally false statements about her instructor, including particularly the claim that the instructor "assaulted" and "battered" her. It concluded that the statements were intimidating, disrespectful and untrue, and that they, along with the language used in Plaintiff's grievance, were intended to threaten and manipulate the administration of the College.

ORDER                                                                 7

It also found, separately, that Plaintiff had intentionally disregarded repeated instructions not to wear sweatshirts over her scrubs, and had used threatening and intimidating language in a phone conversation with Sailer. She was also found to have used sarcastic and mocking comments with regard to the College Nursing Program and "displaying an alarming level of disrespect and disdain for the nursing faculty, patients and medical staff." The Disciplinary Committee concluded that taken together, the words used "substantially threatened the educational process and other legitimate functions of the college, as well as the health and safety of those at the school." It specifically found that Plaintiff's conduct violated WAC 495A-121-029 and -041. [See Dkt. #10; Decl of Pearson at Ex. 2]. As a result, the Committee voted (with Pearson abstaining) to uphold the suspension.

While Plaintiff presumably disagrees with these characterizations and conclusions, she does not provide any evidence, even her own declaration, to dispute them. Instead she argues that in the context of a qualified immunity summary judgment motion, she does not have to establish a violation of her First Amendment rights, and that her factual allegations – the conclusory claim that she engaged in "constitutionally protected speech activities" – are sufficient.[2]

She apparently relies on the language used to describe the first prong of a qualified immunity analysis: "[C]ourts must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." See *Smith v. Rector and Visitors of the University of Virginia,* 78 F.Supp.2d 533, 539 (W.D.Va. 1999), *quoting Wilson v. Layne*, 526 U.S. 603 (1999).

This standard cannot be met by literally, and only, "alleging" that "a constitutional violation has occurred," without any factual support. *Compare* Plaintiff's proposed Amended Complaint, Dkt. #13 at Paragraph 4.4: "[Plaintiff] again engaged in constitutionally protected free speech activities." If this were

---

[2]Plaintiff also argues that discovery has not commenced. But she does not necessarily require discovery to provide her own version of the facts. Plaintiff does not provide any declarations or other evidence, but relies on the allegations in her complaint.

ORDER          8

all that was required to meet her burden of establishing a constitutional deprivation, then very few cases would be decided on the basis of qualified immunity. The first prong of the qualified immunity inquiry would be met by simply alleging in a complaint the "magic words" that a constitutional deprivation had occurred.

On the evidence provided, viewed in the light most favorable to the Plaintiff, it is difficult to conclude that a constitutional violation occurred. Against Plaintiff's conclusory claim that she was suspended in retaliation for engaging in protected speech activity is the Defendant's evidence that the Plaintiff's words were intimidating, threatening, intentionally false and disrespectful.

Nevertheless, because Pearson's qualified immunity can be decided on the second prong of the inquiry, the court will assume for purposes of this motion that Plaintiff's allegations are sufficient to establish a deprivation her constitutional rights.

The second inquiry is whether the right was clearly established. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [actor] his conduct was unlawful *in the situation he confronted*." *Phillips v. Hust*, 477 F.3d 1070, 1079 (9th Cir. 2007)(emphasis added).

Pearson argues that he did not personally participate[3] in any deprivation of rights, based on the fact that he simply presided over the Disciplinary committee's hearing and did not otherwise participate in its decision to uphold the suspension. He argues that even if there was a constitutional violation, and even if the right was clearly established, the Plaintiff must demonstrate that a reasonable official would have known his conduct was a unlawful in the situation he confronted.

Plaintiff provides no evidence, and no authority, for her claim that a reasonable actor would know that it was a violation to preside over a hearing held in compliance with state law, in which the Committee

---

[3] While Pearson also raises "no personal participation" as a separate basis for summary judgment, Pearson's lack of personal participation also plays a role in the qualified immunity analysis. The court does not reach the independent defense, due to its resolution of the qualified immunity defense.

ORDER                                                                9

members voted to uphold an earlier actor's suspension. She argues that Pearson was obligated to dissent, or to inform the Committee that it was violating plaintiff's constitutional rights. Plaintiff cites no cases, and certainly no Supreme Court cases, supporting her position that a reasonable actor in Pearson's situation would have known that failing to do so violated a clearly established constitutional right.

For these reasons, the Court concludes that Pearson is Qualifiedly Immune from plaintiff's §1983 claims against him. His Motion for Summary Judgment [Dkt. #9] is therefore GRANTED and Plaintiff's claims against him are DISMISSED with Prejudice.

**5. Plaintiff's Motion for Leave to Amend her Complaint**.

Plaintiff seeks Leave to Amend her Complaint to clarify the first amendment claims and to delete her due process claims. The due process claims are discussed and dismissed above.

The Plaintiff's Motion [Dkt. #13] is GRANTED; however, that portion of the proposed amended complaint asserting claims against John Pearson personally are inconsistent with this Order shall be revised to reflect this Order. Additionally, if and to the extent Plaintiff seeks to assert additional "protected speech" constitutional claims, the content of the speech must be alleged with enough specificity for Defendants to respond.

IT IS SO ORDERED.

DATED this 6th day of June, 2007.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE